[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage (of approximately 13 1/2 years) brought by the plaintiff Husband, hereafter "Husband" against the defendant Wife, hereafter "Wife" in August, 1993. It is a matter that consumed many days of pre-trial motions, depositions, negotiations, etc., and fourteen (14) days of trial before this court over a period of four (4) months in a limited contested action that was hard fought, very contentious and at times even bitter. Both parties are highly intelligent and well educated. Wife is a clinical psychologist. Husband has a PHD in school psychology and is an expert in the field of autism with a nationwide reputation in same.
The court finds the allegations of the complaint and cross-complaint (paragraphs 1 through 7 of each) have been proven and since paragraph two of each have been proven, the court has jurisdiction in this matter. Accordingly, judgment of dissolution of marriage is hereby entered on the basis of paragraph 3, irretrievable breakdown of the marriage with no reasonable prospect of reconciliation.
As to child support, alimony, award of assets and attorney's fees, the court has considered the criteria set forth in §§46b-84, 46b-81, 46b-82 and 46b-62 which has incorporated by reference the criteria set forth in § 46b-82, all of said sections being those of the Connecticut General Statutes.
In applying these criteria, the court has considered the totality of the evidence including the exhibits and the testimony of the witnesses, including the Husband and Wife. Much of the CT Page 1319-TTT Court's decision is based upon the credibility of the witnesses, in particular the credibility of each of the parties to this action. The court's evaluation of their credibility is based upon their demeanor and attitude on the witness stand, the manner in which they responded to questions and the instances where their testimony conflicted with other evidence, including exhibits; their recollection or lack of recollection of certain events and the interests of the witnesses or lack thereof.
Although the court is not convinced the Wife's outbursts in court were totally credible, and although there appeared to be a conflict between her deposition and court testimony concerning her expectation of and goal of billable hours, the court finds that on the whole the Wife was candid, forthright and consistent in her testimony. She was an honest, reliable and credible witness. This is in sharp contrast to the clear lack of credibility of the Husband who was less than truthful and who often told or committed what Winston Churchill has called "terminological inexactitudes". A few examples thereof are as follows:
 1. The Husband, on Memorial Day weekend, 1993, spent time with one Deborah Meredith, hereafter "Meredith", while they were both at a convention in Chicago. Husband denied any sexual relations or sexual contact with her during that weekend. However, when confronted with his love letter to her of June 20, 1993 (Defendant's Exhibit 38 A), which date was approximately three weeks after returning from that weekend in Chicago, the Husband's reply was "I was desperate".[1] In an apparently subsequent undated letter from Husband to Meredith (Defendant's Exhibit 38 C) Husband refers to his not having wanted to experience her sexually, "although you changed all that in Chicago". The court concludes from the contents of these and other very expressive love letters and the Husband's attitude and responses on the witness stand, that the Husband did have an intimate relationship with Meredith, including sexual relations, in Chicago, Memorial Day weekend, 1993 despite his earlier protestations to the contrary.
 2. In a letter from Husband to Meredith of August 11, 1993 (Defendant's Exhibit 38 D), Husband indicates that he wants to have sexual relations with her again; and he subsequently admitted in court that he had sexual relations with Meredith in July, 1993, at a convention in Toronto. He claims that that was after the marriage had broken down irretrievably. However, he was CT Page 1319-UUU planning their sexual encounter in his letter to her of June 30, 1993 (Defendant's Exhibit 38 B), prior to the time in July when the parties hereto agreed that the marriage had broken down. In this letter, he talks about Meredith and himself being booked on the same flight to Toronto. Despite evidence that sexual relations had occurred between Husband and Meredith in Toronto in the middle of July and that there were subsequent love letters from him to her referring to their sexual relations (Defendant's Exhibits 38 D, 38 F and 38 G) and his admission in court that he did have sexual relations with her in Toronto in July, Husband in effect denied this affair in a November, 1993 deposition under oath, comparing his relationship to her with that of a professional colleague and friend, Dr. Gary Kanabay and with a platonic relationship he had with his friend, Sandra Harris. He also stated that she was merely an acquaintance when in fact he had had and continued to have sexual relations with her and continually made protestations of love to her in various letters. The court can understand Husband's desire to keep his affair with Meredith secret, but the court cannot condone his lying under oath at the deposition.
 3. The court finds his claim that the marriage broke down because the Wife did not want Husband's brother, Steven, who had AIDS, to move in with them in their new home in Tolland to be without foundation. Wife cared for her brother-in-law and went out of her way to help him to obtain medical care for him, prepare meals for him while they were living together in Vernon, having a birthday party for him and, generally, being very attentive to his needs. She had a very close and good relationship with him until he died in March 1991. In September 1991, Husband told Wife he didn't love her anymore. He subsequently claimed it was because she didn't want Steven to live with them in Tolland. However, as early as Mother's Day, 1992, he was writing notes to Wife expressing his deep love for her. In early 1992, he looked forward to the coming year "I only want to share this love with you". November 21, 1992, in his card on their anniversary, he again expressed his love, specifying inter-alia "the constancy, depth and strength of my love". This card was accompanied by a diamond anniversary band, and in the card he stated that his love for her would last longer than the diamonds. In a Valentine card, February, 1993, a little over three months prior to the beginning of his affair with Meredith, he again wrote expressions of love to his wife, even using the phrase "with more love than you'll ever know", which is similar to the ending of his love letter to Meredith of June 20, 1993, "I CT Page 1319-VVV miss you more than you will ever know". See Defendant's Exhibits 35 A, B, C, and D. Either he was not telling the truth about Wife's alleged treatment of Steven as being the cause of the breakdown which he seems to claim started in September 1991, or he got over it very quickly as evidenced by his cards and gifts to Wife starting in early 1992 and going to at least February 14, 1993 in which he expressed his devotion and permanent love for her.
 4. Husband's testimony concerning the policy at Newington Children's Hospital as to filling out time cards is another example of his untruthfulness under oath. He claimed, in court, that there was a policy that allowed him, if he worked ten hours in a day, to put down only eight hours and add two hours to the following date, which would be, of course, a falsifying of records. His testimony was clearly refuted by Dr. Monihan, the head of his department at that time.
 5. There were instances of non-compliance by Husband with some, but not all, discovery requests, contradictions in his testimony as to what he had furnished as well as failing to furnish items ordered by this court during trial.
 The court does not find Husband to be untruthful in the refusal of contract work with the Middletown Board of Education. The court finds the testimony of Ms. Ondoski to be not sufficiently credible to contradict Husband's testimony. He may have come across as arrogant to her, but that is not unusual when a leading expert in the field of autism or any other field has his or her opinion challenged by someone who is essentially a lay person in that field.
 There were other instances of lack of credibility by the Husband, but suffice it to say that frequently he showed his disdain for the truth as well as a pattern of being not willing to accept responsibility for his actions.
With the above in mind and considering the criteria set forth in §§ 46-62, 46b-81, 46b-82 and 46b-84 of the Connecticut General Statutes, and based upon the totality of the evidence, including the credibility of witnesses as described above, the court makes the following additional findings of fact:
1. Fault:
CT Page 1319-WWW
 Having found that the Husband had an intimate relationship, including sexual relations, with Meredith at least as early as Memorial Day weekend in May of 1993, the court also finds that such adultery by the Husband was the primary cause of the irretrievable breakdown of the marriage. Between September, 1991 and May, 1993 the parties were trying to keep the marriage together; and it was working as evidenced by Husband's cards and gifts to his Wife, the latest the court has seen being on February 14, 1993 in which Husband expressed his everlasting love for his Wife. According to the Wife's testimony, which the court believes, things were getting better and it appeared that the marital relationship was improving with every prospect that the marriage would stay together. This was right up to and including the end of May, 1993. Then, commencing the first week in June, 1993, right after Husband's affair with Meredith began at the end of May, 1993, "everything started to go down hill". While Wife was doing everything she could to keep the parties together, Husband became much more difficult and withdrawn no doubt caused by his desire to continue his relationship with Meredith. He had found someone else with whom he had fallen deeply in love and who seemed to meet his perceived needs more than his Wife. Because of this affair with Meredith all progress toward and hope of reconciliation with his Wife were shattered. This affair as described above was what primarily caused the marriage to break down irretrievably. Accordingly, this fault or cause by the Husband will be a factor in the court's consideration of alimony, assignment of property and award of attorney's fees.
2. Earning capacity:
 Based upon the totality of the evidence, including the credibility of witnesses, and after consideration of the exhibits and lengthy testimony concerning earning capacity, the court finds that the Husband has an earning capacity of $201,400 gross annual income.[2] Husband's age is still young at 42, his health is good, his skills and employability are excellent. He is a brilliant psychologist with a rare expertise in the field of autism. He is one of two or three experts in this field in Connecticut. In 1989, his book "Children with Autism: A Parent's Guide" was published, it sold well, and he became a nationally renowned expert in his field. This resulted in his speaking at seminars and conferences throughout the country and bodes well for an increase in his private practice. Husband has admitted to presently being able to work 32 billable hours per week. The CT Page 1319-XXX court finds that he could realistically be expected to work 35 billable hours per week, and based upon testimony and review of his bills in evidence, he could realistically be expected to bill an average of at least at $110 per hour. This would result in $3850 per week. For fifty weeks (allowing him two weeks vacation),[3] that would result in a gross annual income from his private practice of $192,500. In addition, Husband has been receiving royalties from his book for four years. He has been receiving approximately $8900 per year.[4] Royalties that have been steady and have provided a continuous source of income over an extended period of time may be included in determining gross income for the purpose of establishing alimony and child support just as bonuses and contractual rights (which include royalties) are includable. Accordingly, the court finds the Husband's annual earning capacity to be $201,400. A reasonable amount for business expenses (on the $192,500) is $40,000 per year, giving him a net earning capacity before taxes of $161,400 annually.[5]
 As for the Wife's earning capacity, her age of 40 is still young, her health is good, but her skills and employability are far less than that of the Husband. She is a clinical psychologist of which there are many in the State of Connecticut, and does not have the expertise and reputation enjoyed by the Husband. The court finds that the Wife has made every reasonable effort to increase her income. Based upon Wife's increases of approximately $3,000 per year in income over the past few years, the court finds her earning capacity to be $40,000 per year gross income. Taking nineteen billable hours a week at an hourly rate of $45 less 6% for Psych Options East under new contracts would reach essentially the same result of $40,000 per year earning capacity, less business expenses of $2,000 a year, for a net annual income before taxes of $38,000.
 Based upon the above, the court finds that the Husband should pay the Wife $543.00 per week in child support. This is based upon the child support guidelines.
3. Real Estate of the Parties:
 Based upon the appraisals submitted, the court finds the value of the Lawlor Road property to be $233,000. There is a mortgage balance of $221,726, leaving an equity of $11,274. This property is jointly owned. The 200 Spring Hill Road property in Storrs in the name of the Husband, has, based upon the appraisals, a value of $180,000. There are mortgages totaling CT Page 1319-YYY $165,344 leaving an equity of $14,656.
4. Ability to Acquire Assets and Income and Needs of the Parties:
 Based upon the substantial disparity in the parties' incomes and earning capacities now, and in the future, the Husband is in a much better position to acquire assets and additional income, and the Wife, for the same reasons, is in much more need of income and assets.
Accordingly, based upon the totality of the evidence and the aforementioned findings, the court hereby enters the following orders:
1. Judgment of dissolution of the marriage is granted on the grounds of irretrievable breakdown.
2. The parties shall have joint legal custody of the minor children with their primary residence with the Wife who shall be the custodial parent. Visitation shall be in accordance with orders hereinafter set forth on Schedule "A" hereof.
3. Husband shall pay child support of $543 per week for the support and maintenance of said children commencing on the Friday following the date of this judgment. The court has taken into account the Husband's obligation for alimony hereinafter set forth.
4. Husband shall pay to the Wife Twenty Thousand Dollars ($20,000) as lump sum alimony, one half ($10,000) by April 10, 1996 and the other half ($10,000) by July 1, 1996, for her support and maintenance.[6]
5. Husband shall pay periodic alimony to the Wife in the amount of $500 per week for her support and maintenance, commencing on the Friday following the date of this judgment. This alimony shall terminate upon the death of either party or the remarriage of the Wife.
6. Husband's pension/retirement fund with Vanguard shall be transferred to Wife pursuant to a Qualified Domestic Relations Order. Wife shall own said Vanguard pension/retirement fund free and clear from any claim by Husband. Husband shall retain, free and clear from any claim by Wife, his pension/retirement fund with TIAA CREF. CT Page 1319-ZZZ
7. Husband shall quit claim all of his right, title and interest in the marital home at 65 Lawlor Road, Tolland, Connecticut to the Wife who shall be responsible for paying all expenses associated with said residence, including the mortgage, taxes, insurance, repairs and maintenance thereof.
 Husband shall retain all of his right, title and interest in and to his residence at 200 Spring Hill Road, Storrs, Connecticut. In light of the larger equity in the Storrs property and in consideration of the criteria set forth in the Connecticut General Statutes as described above, if a sale of the marital home in Tolland, Connecticut takes place within two (2) years of the date hereof Husband and Wife will share equally in all costs associated with the sale of said home including any deficiency and any major repairs necessitated by the sale and in any capital gains taxes resulting from said sale. The Husband shall be entitled to deduct for tax purposes the interest portion of any mortgage payments made by him on the Lawlor Road property under the pendente lite orders to the date hereof.
8. The Husband and Wife shall share equally in the cost of enrichment activities for the minor children (i.e. musical instructions, summer camp, educational enrichment programs).
9. Husband shall provide medical and dental insurance for the benefit of the minor children in at least as good coverage as on his present policy. The parties shall share equally the cost of all unreimbursed medical, dental, orthodontia, optical, psychiatric and psychological services and expenses including medicine by prescription. The provisions of General Statutes § 46b-84 shall apply.
10. Husband shall maintain a minimum of Three Hundred Thousand ($300,000) in life insurance naming as beneficiary the Wife as the Trustee for the benefit of the minor children of $200,000 and naming Wife as the beneficiary of $100,000. Wife shall maintain a minimum of Fifty Thousand ($50,000) Dollars in life insurance for the benefit of the minor children. The children and the Wife as Trustee for the children shall remain irrevocable beneficiaries until they attain the age of 23. The Wife shall remain an irrevocable beneficiary until her death. These policies are not to be encumbered further.
11. As to both health and life insurance policies, at the request CT Page 1319-AAAA of either party at any time, the other party shall provide proof of such policies to and an authorization for the requesting party to communicate directly with the issuer (i.e. insurance company) of the policies within twenty days of such requests.
12. The parties, through their attorneys, have stipulated in open court that the attorneys' fees of each other's attorneys for this case are fair, just and equitable. The court from its own knowledge of attorney's fees in the applicable areas finds the hourly rate of Wife's attorney ($175) to be fair, just and equitable. Additionally, the court has itself been present for fourteen (14) days of trial. Based upon that and a review of the court file which has made the court aware of motions filed, hearings held, pre-trial conferences held, negotiations held and from the file and the testimony aware of depositions conducted, the court finds the number of hours spent by Wife's attorney to be fair, just and reasonable. Further, in light of the criteria for attorney's fees set forth in General Statutes § 46b-62
which has incorporated by reference the criteria of § 46b-82, and in light of the court's now finding from the totality of the evidence that the Husband unnecessarily prolonged this action in terms of the time spent by the attorneys (i.e. causing the Wife's attorney to prepare and argue issues which should never have been raised by Husband and to find and bring in witnesses necessary to contradict untruths of the Husband), the court hereby awards the sum of Twenty-Five Thousand ($25,000) Dollars which Husband shall pay toward Wife's attorney's fees in monthly installments of $600 commencing August 1, 1996 until paid in full. The court finds that in light of the Husband's large earning capacity as well as his assets (i.e. cash value of life insurance, personal property, etc.,), he has the resources to pay these attorney's fees.
13. Husband shall complete the paperwork necessary to obtain a Jewish "Ghet" within 30 days of the date hereof. Additional proceedings required by conservative Jewish law shall be completed within three (3) months of the date hereof. Husband will cooperate in these proceedings. Wife shall bear all costs associated therewith.
14. Husband shall assign the title of the 1988 Volvo to the Wife who shall indemnify and hold the Husband harmless therefrom. Wife shall be responsible for all costs associated with the maintenance of said automobile. The Husband shall retain the 1994 Jetta and assume the loan thereon and hold the Wife harmless therefrom and from any costs or liabilities concerning said CT Page 1319-BBBB automobile.
15. The parties shall exchange their entire federal tax returns on a yearly basis within ten (10) days of their filing with the IRS. Any modification granted relative to child support shall be retroactive to the April 15th filing deadline so that any modification based upon said tax returns will not be delayed because of delay in filing same or furnishing same to the other party.
16. Wife and Husband shall each be responsible for 50% of the First Card (formerly Chevy Chase Visa) balance, and 50% of the outstanding loan with Savings Bank of Manchester, and will hold the other harmless for failure to pay the 50% which they are obligated to pay. Each party shall be solely responsible for any other debts appearing on their respective latest financial affidavits as well as individual debts incurred subsequent to the separation of the parties, and will hold each other harmless from the said debts on their own financial affidavits and any individual debts incurred subsequent to the separation.
17. Husband shall be entitled to the tax exemption for Seth and the Wife shall be entitled to the tax exemption for Evan. The parties shall execute any and all documents required to effectuate this provision.
18. Any bonds, stocks and/or savings accounts for the children shall continue to be so held for the children's private school and college education costs only, and the party holding them shall share any and all information relating thereto with the other party.
19. Except as specified herein and on Schedule B (Division of Personal Property), each party shall retain all other assets listed on their respective financial affidavits.
20. All transfers shall be made, documents signed and delivered and necessary steps taken to comply with these orders within two (2) weeks of the date hereof.
Judgment is entered in accordance with this Memorandum of Decision.
Rittenband, J. CT Page 1319-CCCC